FOR PUBLICATION

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, v. JOSHUA ADAM SHUEMAKE, *Defendant-Appellant*. | No. 22-30210 D.C. No. 2:21-cr-00194- RAJ-1 OPINION |

Appeal from the United States District Court
for the Western District of Washington
Richard A. Jones, District Judge, Presiding

Submitted November 18, 2024[*]
Seattle, Washington

Filed December 26, 2024

Before: M. Margaret McKeown, Ronald M. Gould, and
Kenneth K. Lee, Circuit Judges.

Opinion by Judge Lee

---

[*] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

# SUMMARY\*\*

## Criminal Law

The panel affirmed Joshua Shuemake's conviction for obstruction of justice in a case in which the district court admitted his friend Luke Ulavale's grand jury testimony implicating Shuemake after Ulavale tried to backtrack at trial claiming memory loss.

Under the prior inconsistent statement rule, Fed. R. Evid. 801(d)(1)(A), a district court can admit an earlier sworn statement if a witness on the stand contradicts that statement.

Rejecting Shuemake's argument that the district court erred in admitting Ulavale's grand jury testimony, the panel held that dubious claims of memory loss—as shown by inexplicable claims of faulty memory, evasive testimony, or similar red flags—may be enough to be treated as an inconsistency under Rule 801(d)(1)(A).

The panel explained that a court cannot admit earlier sworn testimony as a prior inconsistent statement merely because a witness asserts that he cannot recall that prior statement. The dispositive inquiry is whether both the trial testimony and the prior testimony could be equally truthful when asserted. Courts must engage in a fact-intensive inquiry to smoke out a witness' attempt to walk away from prior sworn testimony by asserting a lack of memory.

The panel concluded that Ulavale feigned memory loss on the stand, making Rule 801(d)(1)(A) applicable. Telltale

---

\*\* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

signs of insincerity were plentiful. Ulavale was an uncooperative witness who did not appear to suffer genuine memory loss, and his statements on the stand and his testimony before the grand jury could not be found equally truthful.

## COUNSEL

Tania M. Culbertson and Jonas B. Lerman, Assistant United States Attorney; Jessica Manca, Special Assistant United States Attorney; Tessa M. Gorman, Acting United States Attorney; United States Department of Justice, Office of the United States Attorney, Seattle, Washington; for Plaintiff-Appellee.

Casey M. Arbenz and John A. Sheeran, Puget Law Group LLP, Tacoma, Washington, for Defendant-Appellant.

# OPINION

LEE, Circuit Judge:

Under the prior inconsistent statement rule of the Federal Rules of Evidence, a district court can admit an earlier sworn statement if a witness on the stand contradicts that statement. FED. R. EVID. 801(d)(1)(A). But can a court admit a prior statement if a witness claims at trial that he does not remember saying it? We hold that a feigned lack of recollection may fall within Rule 801's prior inconsistent statement provision. We thus reject Joshua Shuemake's argument that the district court erred in admitting his friend's grand jury testimony implicating Shuemake after he tried to backtrack at trial by claiming memory loss. Shuemake's conviction for obstruction of justice is affirmed.

# BACKGROUND

## I. Shuemake borrows a handgun from his friend, despite a court order preventing him from having firearms.

Joshua Shuemake served as a correctional officer at a federal detention center in SeaTac. He became entangled with the criminal justice system—outside of his workplace—in April 2021 when he was arrested for allegedly assaulting his former girlfriend. A Washington state court issued a no-contact order against him, which prohibited him from possessing firearms. The state court also ordered Shuemake to surrender any firearms he may have.

Shuemake, however, wanted to continue his private security side hustle at a local restaurant and bar. He asked to borrow a handgun from his close friend and co-worker,

Luke Ulavale, who knew him for years and considered Shuemake to be his best friend.  Being a loyal friend but not a model citizen, Ulavale agreed and lent Shuemake his gun.

But unbeknownst to Shuemake, the local police feared he would not comply with the order to surrender firearms and had reached out to the FBI.  The FBI executed a search warrant for his (new) girlfriend's apartment, where Shuemake lived.  The FBI found two firearms in the apartment's bedroom—one registered to Shuemake's girlfriend, and one registered to his friend, Luke Ulavale.  Shuemake's DNA was found on Ulavale's gun.

## II. Shuemake and Ulavale concoct a story about the borrowed gun.

A few months after the raid, Shawna McCann, an FBI agent, served Ulavale with a grand jury subpoena and asked to interview him beforehand.  Ulavale agreed.

For the first portion of the interview, Ulavale offered the "Dale Story"—that Ulavale loaned his gun to Nicholas Dale, another friend and coworker, several months before the FBI's search of the apartment.  Ulavale explained Shuemake and Dale were drinking at the apartment the night before the FBI's search, and Dale accidentally left the gun behind.  But McCann did not buy it.  McCann informed Ulavale that "the only way that he would get in trouble during the interview was if he didn't tell the truth" and gave him a chance to amend his statement.

Ulavale changed his tune.  Ulavale told Agent McCann—and later testified under oath before the grand jury—that Shuemake asked Ulavale to lend him a gun.  Ulavale also testified to the grand jury that Shuemake approached him with the "Dale Story" and encouraged

Ulavale to lie to the FBI. Ulavale explained he met with Shuemake the night before his interview with McCann. At that meeting, Shuemake tried to dissuade Ulavale from going to the interview and encouraged him to "remember what [they] discussed about the gun."

But Ulavale's newfound honesty was fleeting. Despite being a government witness, Ulavale did not appear on the day of his testimony, and FBI agents had to escort him to the courthouse. The government received permission to treat Ulavale as a hostile witness before calling him to the stand.

Just after the government's questioning began, Ulavale's memory inexplicably began to falter. Ulavale claimed he could not remember over a dozen times in response to the government's questions. To refresh his memory, the government handed Ulavale a transcript of his grand jury testimony. Ulavale asserted that the transcript did not refresh his memory or otherwise refused to answer the government's questions.

Ulavale at times made statements that directly conflicted with his grand jury testimony but then retreated to his claim of memory loss. For example, he first asserted he did not discuss the grand jury subpoena with Shuemake and then, when asked again, replied he did not remember if he discussed it with Shuemake. In response, the government read in his grand jury testimony where he stated that he did discuss the subpoena with Shuemake. Similarly, Ulavale testified at trial that he came up with the "Dale Story" to tell the FBI, but then said he could not recall who came up with the story. The government then read in Ulavale's grand jury testimony where he stated Shuemake came up with the "Dale Story."

The government also asked Ulavale about the timing of when he and Shuemake discussed the "Dale Story." Ulavale again refused to answer, and the government read in his grand jury testimony in which Ulavale said, "it took a while to agree on a specific story, . . . [Shuemake] would come bounce an idea off me . . . . And then, you know, it was a series of bounce ideas, and then, 'Okay, let's agree on this.'"

Shuemake objected to the admission of only some parts of Ulavale's grand jury testimony, and only on foundation or relevance grounds.

Shuemake was convicted of unlawful possession of a firearm and obstruction of justice. He now challenges his obstruction of justice conviction, contending that the district court erred in admitting Ulavale's grand jury testimony.

## STANDARD OF REVIEW

We review unpreserved challenges to the admission of evidence for plain error. *See United States v. Gomez-Norena*, 908 F.2d 497, 500 (9th Cir. 1990). To merit reversal, there must be a plain error that affects Shuemake's substantial rights and seriously affects "the fairness, integrity or public reputation of judicial proceedings." *United States v. Young*, 470 U.S. 1, 15 (1985) (citation omitted).

## DISCUSSION

The district court admitted Ulavale's grand jury testimony as a recorded recollection, but this court can "affirm on any basis supported by the record." *Hall v. N. Am. Van Lines, Inc.*, 476 F.3d 683, 686 (9th Cir. 2007). The recorded recollection hearsay exception does not apply here because the government did not lay the proper foundation. Instead, we affirm the admission of Luke Ulavale's prior

grand jury testimony under Rule 801(d)(1)(A) as a "prior inconsistent statement." FED. R. EVID. 801(d)(1)(A).

We hold that dubious claims of memory loss—as shown by inexplicable claims of faulty memory, evasive testimony, or similar red flags—may be enough to be treated as an inconsistency under Rule 801(d)(1)(A).

### A. Feigned memory loss may be a prior inconsistent statement under Rule 801(d)(1)(A).

Under Rule 801, a declarant's prior inconsistent statement is admissible non-hearsay if (1) the declarant testifies and is subject to cross-examination about the prior statement; (2) the prior statement is inconsistent with the declarant's current testimony; and (3) the prior statement "was given under penalty of perjury at a trial, hearing, or other proceeding or in a deposition." FED. R. EVID. 801(d)(1)(A). It is undisputed that the first and third requirements have been met: Ulavale was subject to cross-examination at trial, and his earlier grand jury testimony was given under penalty of perjury. 18 U.S.C. § 1623; *see, e.g.*, *United States v. Champion Int'l Corp.*, 557 F.2d 1270, 1274 (9th Cir. 1977). The key question is whether his grand jury testimony is inconsistent with his assertions at trial that he does not remember his earlier testimony.

The trial court judge has "a high degree of flexibility in deciding the exact point at which a prior statement is sufficiently inconsistent with a witness's trial testimony to permit its use in evidence." *United States v. Morgan*, 555 F.2d 238, 242 (9th Cir. 1977). As leading treatises have pointed out, an "inconsistent statement" can include vague or evasive answers, claims of memory loss, and explicit refusals to answer. *See* 5 WEINSTEIN'S FEDERAL EVIDENCE § 801.21[b] (2024 ed.); 30B WRIGHT & MILLER, FEDERAL

Practice and Procedure § 6744 (2024 ed.). The Advisory Committee Notes to Rule 801(d)(1)(A), quoting observations about California's similar provision, state that admitting these statements guards against the turncoat witness who changes his story on the stand and deprives the party calling him of essential evidence. Fed. R. Evid. 801(d)(1)(A) advisory committee's note to 1972 proposed rules; *see also* Wright & Miller at § 6744. *Cf. California v. Green*, 399 U.S. 149, 151–52 (1970) (upholding constitutionality of California Evidence Code Section 1235, a parallel to Rule 801(d)(1)(A), when preliminary hearing testimony was introduced at trial after witness claimed he could not remember).

The "ultimate test is whether one could reasonably maintain that both the witness' testimony and the witness' prior statement were equally truthful when uttered." Wright & Miller at § 6744. "It would seem strange . . . to assert that a witness can avoid introduction of testimony from a prior proceeding that is inconsistent with his trial testimony . . . by simply asserting lack of memory of the facts to which the prior testimony related." *United States v. Owens*, 484 U.S. 554, 563 (1988) (citing *United States v. Murphy*, 696 F.2d 282, 283–84 (4th Cir. 1982), where grand jury testimony was held properly introduced under Rule 801(d)(1) when a witness claimed memory loss). Simply put, a witness cannot have it both ways: a witness cannot make a sworn statement and then attempt to wiggle out from it by refusing to answer or falsely asserting he cannot recall it.

Our court has not delineated the precise boundaries of Rule 801(d)(1)(A), but we have suggested that claims of memory loss may conflict with earlier testimony—at least when coupled with somewhat varying testimony on the

stand. *See United States v. Tory*, 52 F.3d 207, 209 n.2, 210 (9th Cir. 1995) (prior inconsistent statement admitted for impeachment when witness claimed memory loss and gave somewhat different testimony of suspect wearing "white type of pant" versus "sweatpants"); *United States v. Tran*, 568 F.3d 1156, 1162–63 (9th Cir. 2009) (Rule 801(d)(1)(A) applies when witness' testimony was "vague and evasive," including claim of lack of memory and slightly varying details in testimony). *Cf. also Morgan*, 555 F.2d 242–42 (admitting grand jury testimony as direct evidence under Rule 801(d)(1)(A) where government witnesses were "indefinite and uncertain" when examined at trial).

We affirm these prior decisions and are aligned with our sister circuits in holding that a district court may find that dubious claims of memory loss satisfy Rule 801(d)(1)(A)'s inconsistency requirement.[1] To be clear, we do not hold that a court can admit earlier sworn testimony as a prior inconsistent statement merely because a witness asserts that he cannot recall that prior statement. After all, a witness genuinely may not remember his earlier testimony; in that case, a lawyer can rely on other evidentiary rules such as refreshing the witness' recollection (Rule 612) or using the recorded recollection exception to the hearsay rule (Rule

---

[1] *See United States v. Truman*, 688 F.3d 129, 142 (2d Cir. 2012) ("the refusal to answer" may be "inconsistent with his prior testimony"); *United States v. Iglesias,* 535 F.3d 150, 159 (3d Cir. 2008); *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 757 (5th Cir. 2008) ("[A] witness's 'feigned' memory loss can be considered inconsistent under the Rule, for 'the unwilling witness often takes refuge in a failure to remember'"); *United States v. Hadley*, 431 F.3d 484, 512 (6th Cir. 2005) ("limited and vague recall of events, equivocation, and claims of memory loss satisfy the requirement of Rule 801(d)(1)(A)"); *United States v. Gajo*, 290 F.3d 922, 931 (7th Cir. 2002); *United States v. Dennis*, 625 F.2d 782, 796 (8th Cir. 1980).

803(5)). Under the prior inconsistent statement rule, the dispositive inquiry is whether both the trial testimony and the prior testimony could be equally truthful when asserted. In making this assessment, trial courts can consider various factors—such as (i) inexplicable or questionable explanations for the lack of recollection, (ii) vague and evasive responses suggesting a refusal to answer truthfully, and (iii) potentially conflicting testimony—as signs that a witness is feigning memory loss. Courts must engage in this fact-intensive inquiry to smoke out a witness' attempt to walk away from prior sworn testimony by asserting a lack of memory.

### B. Luke Ulavale feigned memory loss on the stand, making Rule 801(d)(1)(A) applicable.

Ulavale's questionable assertions that he could not recall his grand jury testimony fall within the boundaries of Rule 801(d)(1)(A). *See Tran*, 568 F.3d at 1162–63; *Tory*, 52 F.3d at 209–10.

Telltale signs of insincerity were plentiful. For example, Ulavale twice gave responses inconsistent with his grand jury testimony and then tried to walk back his responses by feigning memory loss. Ulavale first asserted he did not discuss the grand jury subpoena with Shuemake and then, when asked again, replied he did not remember. In the second instance, Ulavale initially said he came up with the "Dale Story" to tell the FBI, then replied he could not recall who came up with the story. What's more, Ulavale over a dozen times asserted that he could not recall, despite reading his grand jury testimony from only about a year prior.

In sum, Ulavale's statements on the stand and his testimony before the grand jury could not be found equally truthful. Ulavale was an uncooperative witness who did not

appear to suffer genuine memory loss. His testimony on the stand, while not always categorically contradictory, was still inconsistent with his grand jury testimony under Rule 801(d)(1)(A).

## CONCLUSION

We **AFFIRM** Shuemake's obstruction of justice conviction.